UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | |
|---|---|
| v. | Case No. 3:10-CR-51 JD |
| KEVIN L HITE | |

**OPINION AND ORDER**

Defendant Kevin Hite pled guilty to Count 1 of the Indictment, possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1), and Count 2, possessing a stolen firearm in violation of 18 U.S.C. § 922(j). He was sentenced on October 25, 2010 to 180 months on Count 1 pursuant to 18 U.S.C. § 924(e) and 120 months on Count 2, both terms to run concurrently. He is currently serving those sentences and is housed in FCI Elkton with a release date of February 22, 2025. On December 28, 2020, Mr. Hite filed a motion for compassionate release or sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). [DE 76]. He also filed a motion to appoint counsel, which the Court referred to the Federal Community Defenders Office. [DE 77, 78]. On January 8, 2021, defense counsel filed an appearance. [DE 81]. Counsel filed a supplemental briefing, including medical records, on behalf of Mr. Hite. [DE 85]. The government filed medical records and a response in opposition arguing that Mr. Hite has not presented extraordinary and compelling reasons warranting compassionate release, and the § 3553(a) factors do not favor release, to which Mr. Hite, through counsel, replied. [DE 92, 95]. Lastly, on April 26, 2021, the government also filed a supplemental brief and medical records, indicating Mr. Hite is now fully vaccinated against COVID-19, having received his second Moderna shot on March 30, 2021.

A court generally cannot modify a sentence once the sentence has been imposed. 18 U.S.C. § 3582(c). However, an exception to that general rule allows a court to modify a sentence, after considering the factors under § 3553(a), if "extraordinary and compelling reasons warrant such a reduction," the reduction is consistent with policy statements issued by the Sentencing Commissions, and the defendant has submitted such a request to the warden at least 30 days before filing a motion or has fully exhausted all administrative rights within the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). The application notes to the Sentencing Guidelines offer some examples of when extraordinary and compelling reasons may be present. Those include when the defendant is suffering from a terminal illness or is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within the prison. U.S.S.G. § 1B1.13 n.1. *See United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020) (finding the substantive aspects of U.S.S.G. § 1B1.13 and its Application Notes provide a "working definition" of "extraordinary and compelling reasons" that can guide a court's discretion without being conclusive). Because Mr. Hite submitted a request to the Warden at least 30 days before filing his motion with the Court, which the Warden subsequently denied, pursuant to § 3582(c)(1)(A), the Court reviews the merits of the motion. [DE 95-1 at 1; 95-2 at 1].

First, the Court does not find that extraordinary and compelling reasons warrant compassionate release, home confinement, or a reduction in sentence here. In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *United States v. Council*, 2020 WL 3097461, at *5 (N.D. Ind. June 11, 2020); *see also United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020). In determining whether there is an extraordinary and compelling reason to modify a term

of imprisonment, the Court may consider (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, (3) the age of the defendant, and (4) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See Council*, 2020 WL 3097461, at *5–7; *United States v. Barrett*, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic).

Mr. Hite will be 65 years old in July 2021. The Centers for Disease Control ("CDC") reports that the risk of severe illness from COVID-19 increases with age, and that while the greatest risk of severe illness is among those aged 85 or older, adults aged 65 and older have increased risk. Mr. Hite is at the low end of this age range. Mr. Hite asserts he has several underlying medical conditions that warrant release due to the risk of severe illness were he to contract the virus. These conditions are Hepatitis C and cirrhosis (scarring) of the liver, hypertension (high blood pressure), and hyperlipidemia (high cholesterol).[1] Mr. Hite has had Hepatitis well before he began serving this instant sentence, however, it is in remission. At the time of his PSR, he reported his cirrhosis of the liver was in advanced stages and his medical records indicate that he also self-reported this to BOP medical staff. [DE 85-1 at 58]. The CDC has also indicated having Hepatitis C might make a person more likely to get severely ill from COVID-19.[2] The CDC has recognized that adults of any age who suffer from hypertension can

---

[1] In his pro se motion, Mr. Hite stated he suffers from respiratory problems from asthma-related issues. His counsel's supplemental brief does not discuss this condition, nor do any of the medical records submitted by Mr. Hite's counsel or the government indicate he has respiratory problems or asthma.
[2] *See What to Know About Liver Disease and COVID-19*, Centers for Disease Control and Prevention, (Feb. 8, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html.

3

be more likely to get severely ill from COVID-19.[3] Mr. Hite's medical records indicated that both his hypertension and hyperlipidemia are "well controlled" and he has been prescribed medications to help manage both conditions. [DE 85-1 at 2; 85-3 at 10; 92-1 at 32]. Further, the CDC does not list high cholesterol as a condition that increases the risk of severe illness from COVID-19.[4] However, Mr. Hite argues the potential interaction between the medications used to treat high cholesterol and those who have suffered previous damage to the liver may require the suspension of the medications if COVID-19 is contracted. [DE 85 at 6]. While this may be true, speculation that the suspension of these medications may expose the patient to an increased risk of cardio-vascular event is too tenuous to be extraordinary and compelling. The status of these underlying conditions and the risk of severe illness that they can pose if Mr. Hite contracts COVID-19 does not rise to the level of extraordinary and compelling reasons, and therefore, compassionate release or a reduction in sentence is not warranted.

Additionally, the BOP reports Elkton currently has zero inmates and one staff member who are positive for COVID-19.[5] Tragically, there has been nine inmate deaths at the facility. Although the BOP has implemented several precautions to help mitigate the spread, Elkton has experienced outbreaks in its facility. Over the course of the COVID-19 pandemic, there have been 803 inmates and 85 staff members who have tested positive for the virus.[6] Fortunately, the

---

[3] *See Medical Conditions*, Centers for Disease Control and Prevention, (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html
[4] *Id.*
[5] *See Covid-19 Coronavirus*, Federal Bureau of Prison, (June 21, 2021), https://www.bop.gov/coronavirus/.
[6] Based on filings in *Wilson vs. Williams* (4:20-cv-794) in the Northern District of Ohio cited by Mr. Hite, since May 2020, the BOP has dramatically decreased the inmate population of Elkton. [DE 85 at 3]. Further, Mr. Hite references a status report filed in *Wilson*, which indicated that 1,057 inmates at Elkton have tested positive for the virus. However, the Court cites to the current number referenced on BOP's website dedicated to tracking COVID-19 throughout its facilities.

number of current cases is nearly zero, likely due to both the decreasing cases within the community as well as the BOP's vaccine distribution efforts.

The BOP has reported that it is in the process of distributing and administering the COVID-19 vaccine to staff and inmates under the guidance of the CDC. As of June 21, 2021, the BOP has administered 195,504 doses of the vaccine.[7] More specifically, as of June 21, Elkton has 1,045 inmates and 204 staff members fully inoculated.[8] This means roughly seventy-four percent of the inmate population at Elkton is fully vaccinated, greatly reducing the likelihood of another spike in COVID-19 cases in the facility.[9] Mr. Hite received his first dose of the COVID-19 vaccine on March 3, 2021 and his second dose on March 30. [DE 101-1; DE 92-1 at 50]. According to the CDC, the Moderna vaccine is "94.1% effective at preventing laboratory confirmed COVID-19 illness in people who received two doses who had no evidence of being previously infected" and was found with high certainty to prevent symptomatic COVID-19, and with moderate certainty to prevent hospitalization related to COVID-19.[10] Mr. Hite's medical records indicate he has been tested for COVID-19 at least three times, which were all negative.

An overwhelming amount of district courts across the country have held that being fully vaccinated drastically reduces the risk of becoming severely ill and therefore denied compassionate release. *See, e.g.*, *United States v. Pennington*, 2021 WL 1976803, at *2 (N.D. Ind. May 18, 2021) ("By far the biggest reason compassionate release is not appropriate in this case is that [the defendant] is vaccinated."); *United States v. Baeza-Vargas*, 2021 WL 1250349,

---

[7] *See Covid-19 Coronavirus*, Federal Bureau of Prison, (June 21, 2021), https://www.bop.gov/coronavirus/.
[8] *Id.*
[9] Elkton currently houses 1,404 total inmates. *FCI Elkton*, Federal Bureau of Prison, https://www.bop.gov/locations/institutions/elk/, (last visited June 21, 2021).
[10] *Moderna*, Centers for Disease Control and Prevention, (June 11, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html; *Morbidity and Mortality Weekly Report (MMWR), The Advisory Committee on Immunization Practices' Interim Recommendation for Use of Moderna COVID-19 Vaccine—United States*, Centers for Disease Control and Prevention, December 2020, https://www.cdc.gov/mmwr/volumes/69/wr/mm695152e1.htm?s_cid=mm695152e1_w.

at *3 (D. Ariz. Apr. 5, 2021) (citing more than a dozen cases); *United States v. Singh*, 2021 WL 928740, at *3 (M.D. Penn. March 11, 2021) ("as a result of his vaccination, [the defendant] now has significant protection against serious illness or death should he contract COVID-19 and, accordingly, the Court concludes that [the defendant] has not demonstrated that his underlying conditions—in combination with the possibility of a COVID-19 infection—provide extraordinary and compelling reasons to grant his motion for compassionate release"). Given his underlying conditions and being fully inoculated, the Court does not find that Mr. Hite has established that extraordinary and compelling reasons warrant a reduction in his sentence or his release.

Second, even if the above facts qualified as extraordinary and compelling reasons, the Court would still deny the motion based on its consideration of the § 3553(a) factors. In support of his motion, Mr. Hite asserts that he has a re-entry plan if released, which includes moving to Kentucky, working for a construction firm, and living at an extended-stay facility with which the construction firm has a relationship. [DE 85 at 7]. BOP records indicate he has served about 59% of his full term. He has an excellent disciplinary record, with only one lower level violation in the past nine years, has maintained employment since 2012, and has saved money. He asserted further that he has participated in education programs that are designed to prevent recidivism, has paid about 85% of the full restitution, and has completed a drug treatment program and apprenticeship for computer peripheral equipment operator. [DE 76 at 6]. Mr. Hite is to be commended for all of these accomplishments and plans for the future, which reflect well on his desire to improve his life upon his release.

As positive as these factors are, however, there are several serious § 3553(a) factors that weigh against Mr. Hite's release. Mr. Hite asserts he is not a threat to the public due to his

excellent disciplinary record and his advanced aged. However, the nature and circumstances of his instant offense was serious, involving Mr. Hite burglarizing a home and stealing a loaded firearm and jewelry worth more than $10,000. Mr. Hite is an armed career criminal. He has a very serious and extensive criminal history, including three convictions in state court for prior burglaries, with sentencings totaling 40 years for those convictions. He committed the instant offense, which was yet another burglary and stealing a loaded gun, while on parole. The Court agrees with the government—the pattern is clear. This pattern indicates a high risk of recidivism, even given his age. When Mr. Hite was convicted in 2010 for the instant offense, he was 53 years old and age did not seem to deter him then. Under those circumstances, the Court does not find that the § 3553(a) factors support Mr. Hite's compassionate release or a reduction in sentence.

For those reasons, the Court DENIES Mr. Hite's motion for compassionate release or reduction in sentence. [DE 76].

SO ORDERED.

ENTERED: June 21, 2021

/s/ JON E. DEGUILIO
Chief Judge
United States District Court